UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 10 2018 ★
BROOKLYN OFFICE

---

ALTAGRACIA TEJADA, ELIBERTO SILVA, NEWTON DECAMPOS, IVANA VUKSIC, and SUSANA LOPEZ on behalf of themselves, and all others similarly situated,

Plaintiffs,

– against –

LITTLE CITY REALTY LLC, LITTLE BOY REALTY LLC, ADEL ESKANDER and LINDA ESKANDER,

Defendants.

**MEMORANDUM & ORDER**

18-CV-483

---

**Parties**                     **Appearances**

Plaintiffs
    Jennifer Levy
    Judith Goldiner
    Morenike Fajana
    Robert Desir
    Sunny Noh
    Legal Aid Society
    111 Livingston Street
    New York, NY 10005

    Caroline Saucier
    Celia Lee Belmonte
    Landis Best
    Samantha Lawson
    Cahill Gordon Reindel LLP
    80 Pine Street
    New York, NY 10005

Defendants
    Fran M. Jacobs
    Duane Morris
    1540 Broadway
    New York, NY 10036

1

**JACK B. WEINSTEIN, Senior United States District Judge:**

Table of Contents

I. Introduction .................................................................................................................... 2
   a. Phase I: Injunctive Relief ......................................................................................... 5
   b. Phase II: Trial of Liability and Damages ................................................................ 5
II. Background ..................................................................................................................... 5
   a. Parties ...................................................................................................................... 5
   b. Plaintiffs' Claims ..................................................................................................... 6
   c. Defendants' Motion to Dismiss ............................................................................... 7
III. Factual Allegations ......................................................................................................... 7
IV. Law .................................................................................................................................. 8
   a. Motion to Dismiss .................................................................................................... 8
   b. Supplemental Jurisdiction ........................................................................................ 9
   c. Statute of Limitations for Fair Housing Act ............................................................ 9
   d. Statute of Limitations for New York City Human Rights Law ............................. 10
   e. Statute of Limitations for New York City Housing Maintenance Law ................ 11
   f. Statute of Limitations for New York Rent Stabilization Law .............................. 11
V. Application .................................................................................................................... 13
   a. Supplemental Jurisdiction ...................................................................................... 13
   b. Continuing Violations Under the Fair Housing Act and City Law Claims .......... 15
   c. Rent Stabilization Fraud ........................................................................................ 16
VI. Conclusion .................................................................................................................... 17

I. Introduction

Plaintiffs allege housing discrimination with respect to race and national origin, in the operation of two large apartment buildings in Sunset Park, Brooklyn, an area of increasing gentrification. Complaint ("Compl."), ECF No. 1, Jan. 23, 2018, at ¶ 1. They claim defendants intentionally targeted Latino residents living in rent-stabilized apartments, in violation of federal, state and municipal law, in an effort to displace them. *Id.* at ¶ 2 (Defendants required "only tenants who are perceived as Latino to provide proof of their legal immigration status when they

renew their leases; [brought] frivolous eviction proceedings against Latino tenants; and [threatened and intimidated] Latino tenants."). Defendants then, allegedly, "imposed unlawful rent increases" and "misrepresented the regulatory status of these apartments," to incoming tenants. *Id.*

New York City provides powerful tenant protection laws. Nevertheless, landlords, as reported, are increasingly resorting to harassment and other tactics to circumvent legal protections and remove rent-stabilized tenants in an effort to illegally raise rents. *See, e.g.,* Michael Greenberg, *Tenants Under Siege: Inside New York City's Housing Crisis*, The N.Y. Review of Books, Aug. 17, 2017 ("When a landlord embarks on a campaign to 'unlock value' in his building, it becomes a consuming psychological torment for renters . . . [T]he barrage of lawsuits helps set the stage for a buyout: financially and emotionally ground down, the tenant agrees to relinquish his rights and depart."); Kim Barker, *Landlord Raised Rents for Renovations Never Done, Lawsuit Says*, N.Y. Times, Jul. 25, 2017 ("The rent for regulated apartments can only be increased a certain amount every year. They are the city's largest affordable-housing program — making them one of the only ways that many people can afford to live in New York City these days. Roughly 1 million apartments, or almost half the city's rental stock, are supposed to be regulated.").

The number of rent-stabilized apartments is rapidly diminishing. Greenberg, *supra* ("[B]etween 2007 and 2014, 25 percent of the rent-stabilized apartments on the Upper West Side of Manhattan were deregulated."); *see also* Justin R. La Mort, *The Theft of Affordable Housing: How Rent-Stabilized Apartments Are Disappearing from Fraudulent Individual Apartment Improvements and What Can Be Done to Save Them*, 40 N.Y.U. Rev. L. & Soc. Change 351, 362-63 (2016) ("From 1994 to 2012, New York City had a net loss of 152,751 affordable

housing units from the rent stabilization system."); Luis Ferré-Sadurní, *Annual Battle Over Raising Rents in New York Begins*, N.Y. Times, Mar. 8, 2018 ("[One tenant] said that since her landlord raised her rent by $300 last month, she has been fearing eviction . . ."); Jesse Drucker, *Tenants Sue Kushner Companies Claiming Rent Rule Violations*, N.Y. Times, Aug. 15, 2017 ("[The Landlord] was [allegedly] charging the tenant about $2,500 a month, when he estimated the legal rent should more properly have been about $1,100 a month, based on the permissible increases since the last time the unit's rent was regulated."); Mireya Navarro, *Tenants Living Amid Rubble in Rent-Regulated Apartment War*, N.Y. Times, Feb. 24, 2014 ("[T]enants and the landlord are locked in a standoff that underscores the anxiety coursing through changing neighborhoods, where many landlords are trying to capitalize on New York City's robust real estate market while many lower-income tenants wonder how long they will be able to hold on to their homes . . . [T]enant advocates say that, in order to make a dent, the [city] must . . . focus on the loss of affordable apartments.").

Defendants' motion to dismiss on the pleadings is denied. There is testimonial and documentary support for the claims that defendants: (1) perpetuated a fraudulent scheme to illegally remove plaintiffs, perceived Latinos, from their apartments through harassment and a variety of discriminatory tactics; (2) continued this discrimination and harassment from 2001 through 2017; and (3) acted with the purpose of displacing them, deregulating their apartments, and then increasing rent on incoming plaintiffs, largely non-Latino Caucasians.

Defendants have agreed to eliminate the unacceptable discriminatory nationality provision used in their leases for over a decade. *See* Hr'g Tr., Mar. 28, 2018.

The case will proceed in two phases: first, with a hearing and decision on the request for an injunction and declaratory order; and, second, with a trial on the merits for damages. The magistrate judge is respectfully requested to accelerate discovery and assist in settlement.

    a. Phase I: Injunctive Relief

The court will hear an application for a permanent injunction on May 3, 2018, at 11:30 a.m. in court room 10B South. All named individual plaintiffs and defendants shall be present, subject to examination, at this evidentiary hearing.

Plaintiffs shall proceed with sworn witnesses present or provided through depositions or video testimony. On April 26, 2018, the parties shall file a list of witnesses and the expected substance of their testimony, exhibits properly authenticated and stipulations of admissibility. Defendants shall reciprocate on the same terms. At this hearing the court will resolve the issues of class certification and individual liability. *See* Fed. R. Civ. P. 23.

Briefs on injunctive relief, class certification and individual liability are due April 23, 2018.

    b. Phase II: Trial of Liability and Damages

Trial is scheduled for July 9, 2018, in court room 10B South at 2:00 p.m. An *in limine* hearing will be held on June 25, 2018 at 10:30 a.m. The parties shall exchange and file with the court by June 18, 2018, the following: (1) motions *in limine*; (2) lists of pre-marked exhibits proposed for use at the trial, together with copies of the exhibits, and stipulations regarding admissibility and authenticity; (3) lists of proposed witnesses together with brief summaries of their proposed testimony; and (4) stipulations with respect to undisputed facts.

II. Background

    a. Parties

Plaintiffs are current and former tenants of two apartment buildings, 601 40th Street, Brooklyn, NY 11232 ("601 building") and 614 40th Street, Brooklyn, NY 11232 ("614 building"). Compl., at ¶ 11.

Plaintiffs include: Altagracia Tejada ("Tejada"), a brown-skinned Latina. *Id.* at ¶ 12. She has resided in a rent-stabilized apartment in the 614 building since 2003. *Id.* Eliberto Silva ("Silva") is a brown-skinned Latino. *Id.* at ¶ 13. He has resided in a rent-stabilized apartment in the 614 building since 1990. *Id.* Newton Decampos ("Decampos") is a brown-skinned Latino. *Id.* at ¶ 14. He moved into his rent-stabilized apartment at the 601 building in 1987. *Id.* Ivana Vuksic ("Vuksic") and Ashley Marimon ("Marimon") are non-Latina Caucasian women. *Id.* at ¶¶ 15, 16. Vuksic moved into a deregulated apartment in the 614 building in 2015 and moved out in 2017. *Id.* Marimon moved into a deregulated apartment in the 614 building in 2014. *Id.* Susana Lopez is a fair-skinned Latina woman who moved into a deregulated apartment in the 614 building in 2014. *Id.* at ¶ 17.

Adel Eskander and Linda Eskander are individually named defendants and the owners and officers of the corporate defendants, LittleCity Realty LLC and LittleBoy Realty LLC. *Id.* at ¶¶ 18-21. The Eskanders purchased the 601 building in 2001, and the 614 building in 2003. *Id.* at ¶¶ 19-20.

b. Plaintiffs' Claims

Plaintiffs sue under: (1) the Fair Housing Act, 42 U.S.C. § 3604, for discrimination based on race, color, and national origin; (2) New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(5), because of discrimination in housing accommodations based on perceived national origin, alienage, or citizenship status; (3) New York City Housing Code, N.Y.C. Admin. Code §

27-2004(a)(48), because of continued harassment; and (4) New York Rent Stabilization Laws, N.Y.C. Admin. Code § 26-516(a)(2), because of overcharges in rent stabilized apartments.

    c. Defendants' Motion to Dismiss

Defendants move to dismiss: (1) all Rent Stabilization Law claims as not part of the same case or controversy, under 28 U.S.C. § 1367; (2) federal and city discrimination and harassment claims as time barred; and (3) rental stabilization claims as time barred. They also move to dismiss claims related to class certification as well as individual liability. These issues will be the subject of further briefing and will be addressed at a later hearing, *see supra* Part I.a.

III. Factual Allegations

Defendants own and operate two apartment buildings in Sunset Park, Brooklyn. Compl., at ¶¶ 18-21. They lease a total of 78 units. *Id.* at ¶ 41. Plaintiffs allege these buildings were predominantly occupied by Latino tenants, living in rent stabilized apartments, in the early 2000s when purchased by defendants. *Id.* at ¶ 42. Latino tenants were then allegedly targeted and harassed by defendants in an effort to get rid of them. *Id.* Plaintiffs allege this strategy worked, and by 2009 more than 50% of Latino tenants had vacated the buildings. *Id.* It is contended that these apartments were then illegally declared by the landlords to be deregulated, that is, no longer subject to Rent Stabilization Laws. *Id.*

Plaintiffs claim continuous discrimination and harassment by defendants, beginning in 2001 with a lease addendum required only for tenants perceived to be Latino. *Id.* at ¶¶ 61-62. These tenants were instructed to "affirm their legal immigration status." *Id.* This clause is alleged to have been a prerequisite for residency through 2017. *Id.* at ¶ 93. Discriminatory harassment is further charged in the form of frivolous lawsuits, baseless eviction proceedings, failure to make necessary repairs, and repeated oral statements of dislike for tenants of color. *Id.*

7

at ¶¶ 98-141; *see Id.* at ¶ 104 ("We can give you your security deposit back, and my wife [Defendant Linda Eskander] can help you look for a place. I don't like having Latinos, [B]lacks or Chinese here because they're sedentary. They never move. I need people to move.").

Individual, Caucasian non-Latino plaintiffs, say they were not required to sign the lease addendum affirming their immigration status. *Id.* at ¶¶ 142-152.

After Latino tenants vacated their rent-stabilized apartments, defendants allegedly "deregulated" the units in violation of Rent Stabilization Laws, and rented them to Caucasian non-Latino plaintiffs at unlawfully inflated prices. *Id.* at ¶¶ 153-205.

IV. Law

    a. Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must state factual allegations sufficient to "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Whether a complaint states a plausible claim for relief is "a context-specific [task], requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court should assume the "veracity" of well-pled allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679). All reasonable inferences are drawn in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

In reviewing a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

b. Supplemental Jurisdiction

In any civil case, a federal district court with original jurisdiction, shall have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Pendent jurisdiction over state law claims, "while not automatic, is a favored and normal course of action." *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991). Supplemental jurisdiction is a "doctrine of discretion" whose "justification lies in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

State and federal claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *Id.* at 725. This occurs where "the facts underlying the federal and state claims substantially overlapped." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000); *see Luongo v. Nationwide Mut. Ins. Co.*, No. 95 CIV. 3190 MBM, 1996 WL 445365, at *4 (S.D.N.Y. Aug. 7, 1996) ("Even though the standards for . . . liability will differ . . . the claims still will require many of the same witnesses, much of the same evidence, and determination of many of the same facts."); *But see Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 704 ("[W]e have found pendent jurisdiction lacking when the federal and state claims rested on essentially unrelated facts."). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

c. Statute of Limitations for Fair Housing Act

The Fair Housing Act ("Act") protects tenants from discrimination in the "terms, conditions, or privileges" of a rental or dwelling based on "race, color, religion, sex, familial

9

status, or national origin." 42 U.S.C. § 3604(b). A civil action, under the Act, may be brought no "later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a).

The Supreme Court in *Havens v. Coleman*, 455 U.S. 363, 380 (1982), extended the statute of limitations to allow a challenge to "continuing violations." When a plaintiff claims "not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely" if the last alleged practice is within the two-year statutory period. *Id.* at 381.

Courts have applied the "continuing violations" standard in housing and other settings to claims well outside the limitations period. *See E. Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 213 (E.D.N.Y. 2001) (allowing a continuing violation claim under the Act to reach conduct over five years outside the statute of limitations period); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) ("[T]he district court correctly ruled that the discrimination and harassment suffered by Cornwell was a continuing violation that began in 1981 and did not end until she finally left MacCormick in 1986.").

d.  Statute of Limitations for New York City Human Rights Law

Pursuant to New York City Human Rights Law, it is an unlawful discriminatory practice for the owner of a housing accommodation:

> *to refuse to sell, rent, lease*, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein *because of the actual or perceived race, creed, color, national origin,* gender, age, disability, sexual orientation, marital status, partnership status, *or alienage or citizenship status* of such person or persons.

N.Y.C. Admin. Code § 8-107(5)(a)(1) (emphasis added).

The City Code provides that a "civil action . . . must be commenced within three years after the alleged unlawful discriminatory practice . . . occurred." N.Y.C. Admin. Code § 8-502(d). There is little difference between the proof required under New York City Human Rights Law and federal housing discrimination claims. The continuing violations doctrine may be applied to New York City Human Rights Laws. *Cf. Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002), *aff'd*, 76 F. App'x 366 (2d Cir. 2003) (applying the continuing violations doctrine to New York State Human Rights Law because of its similarity to federal employment discrimination laws); *see also Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02 CIV. 3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003) ("The court finds the [continuing violation doctrine] . . . applicable to the City Human Rights Laws.").

e. Statute of Limitations for New York City Housing Maintenance Law

The New York City Housing Maintenance Code defines "harassment" as "any act or omission by or on behalf of an owner that . . . causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy . . . " N.Y.C. Admin. Code § 27-2004(a)(48).

The Housing Maintenance Code provides no statute of limitations. Defendants argue that N.Y. CPLR 214(2) should control this code, and a three-year statute of limitations applies. This open question of state law is not now decided. But, even if the three-year limitations bar governs, because the statute protects tenants from acts such as "repeated interruptions or discontinuances of essential services" and "repeated baseless or frivolous court proceedings," the continuing violations doctrine applies. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) ("Where the challenged violation is a continuing one, the staleness concern disappears.").

f. Statute of Limitations for New York Rent Stabilization Law

11

New York Rent Stabilization Law § 2522 delineates allowable rent increases in regulated apartments. Any complaint alleging overcharging must be filed "within four years of the first overcharge alleged . . ." and shall not examine "the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint." *See also* N.Y.C. Admin. Code § 26-516(a)(2).

An exception exists for fraud. "[W]here the overcharge complaint alleges fraud [there is] an obligation to ascertain whether the rent on the base date is a lawful rent." *Grimm v. State Div. of Hous. & Cmty. Renewal Office of Rent Admin.*, 15 N.Y.3d 358, 366 (2010). "Generally, an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud,' and a mere allegation of fraud alone, without more, will not be sufficient . . . What is required is evidence of a landlord's fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization." *Id.* at 367.

Factors that "warrant an investigation regarding the legality of the rent in effect four years prior to the interposition of the claim are: (1) the tenant alleges circumstances that indicate the landlord's violation of the Rent Stabilization Law and Rent Stabilization Code in addition to charging an illegal rent; (2) the evidence indicates a fraudulent scheme to remove the rental unit from rent regulation; and/or (3) the rent registration history is inconsistent with the lease history." *FAV 45 LLC v. McBain*, 986 N.Y.S.2d 865 (Civ. Ct. 2014) (citing *Matter of Pehrson v. Division of Hous. & Community Renewal of the State of NY*, 34 Misc.3d 1220A (S. Ct. N.Y. Co. 2011)). Evidence indicative of fraud include a landlord withholding information on rent stabilization status, or failure to provide proof of claimed improvements in the rented premises. *See 1290 Ocean Realty LLC v. Massena*, 2015 WL 920468 at * 6 (N.Y. Civ. Ct. 2015) (finding the failure to provide a Rent Stabilization Rider and a lack of justification for large increases in

rent to be indicia of fraud); *Altschuler* v. *Jobman 478/480, LLC.*, 22 N.Y.S.3d 427, 429 (N.Y. App. Div. 2016) (finding indicia of fraud where landlord failed to provide evidence of alleged improvements to tenant's apartment sufficient to justify an increase in rent).

V. Application

    a. Supplemental Jurisdiction

The common nucleus of underlying facts, between the federal discrimination claim and the city overcharge claim, supports supplemental jurisdiction. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) ("Turning to the terms of the statute, we have held that disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact.").

Individual plaintiffs allege defendants engaged in a discriminatory scheme to intentionally displace Latino tenants, in violation of federal law, in order to "illegally deregulate apartments [and overcharge tenants] in violation of the Rent Stabilization Laws." Plaintiffs' Motion in Opposition ("Mot. in Opp."), ECF No. 18, Mar. 26, 2018, at 14.

To prove the federal claim plaintiffs rely on allegations that they reside in rent-stabilized apartments, that they suffered discrimination and harassment including a lease addendum that required them, and them alone among tenants, to disclose their immigration status, and that Latino tenants were displaced from the building. The vacated units were then allegedly deregulated, and the new tenants were overcharged.

Allegations of overcharging may be relevant to prove defendants' motive for discrimination under the Federal Housing Act. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). The alleged federal

13

claims, while primarily affecting Latino tenants, also may harm non-Latino plaintiffs living in the buildings by limiting their contact with an integrated community. *Trafficante* v. *Metropolitan Life Insurance Co.*, 409 U.S. 205, 209-210 (1972) ("[T]he alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations.").

Under the Rent Stabilization Laws, plaintiffs allege they are currently overcharged for their rent, their apartment units were illegally deregulated, and previous Latino tenants were discriminated against and displaced from rent-stabilized apartments, all as part of a corrupt scheme to evade rental protection laws. *See* Mot. in Opp., at 15 ("Plaintiffs have alleged many facts in common between their federal and state claims, as both sets of claims turn on the identities of the tenants at the Buildings, the leases offered to tenants at the Buildings, improvements, renovations, and repairs made at the Buildings, and Defendants' statements about tenants' leases and conditions of their tenancies, among other issues."). In order to extend the statute of limitations under the Rent Stabilization Laws, plaintiffs are required to claim fraud. *See Grimm*, 15 N.Y.3d at 366. Here, plaintiffs allege the fraudulent scheme to deregulate the buildings began with the intentional attempts to displace Latino tenants.

Although the city claims may call for additional discovery and some evidence beyond what is required for the federal claims, these considerations are outweighed by the "advantages of trying these closely related claims together." *Brown v. Bronx Cross Cty. Med. Grp.*, 834 F. Supp. 105, 109 (S.D.N.Y. 1993) ("[H]ardship and expense [] would be imposed on the plaintiff[s] if compelled to bring a parallel state court action on the state law claims . . . Thus, 'considerations of judicial economy, convenience and fairness to litigants,' make the exercise of

supplemental jurisdiction over plaintiff's state law claims appropriate.") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because of the alleged continuing scheme by defendants, and the nexus between plaintiffs' city and federal housing claims, utilization of jurisdiction is appropriate. *Gibbs*, 383 U.S. at 727 ("There may . . . be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.").

b. Continuing Violations Under the Fair Housing Act and City Law Claims

Defendants' pattern and practice of discriminatory harassment from 2001 through 2017, as alleged, qualifies as a "continuing violation." *See Havens v. Coleman*, 455 U.S. 363, 380 (1982) ("Plainly the claims, as currently alleged, are based not solely on isolated incidents . . . but a continuing violation manifested in a number of incidents—including at least one that is asserted to have occurred within the [two-year] period."). These acts include requiring perceived Latino tenants to sign a lease addendum disclosing their national origin, filing frivolous lawsuits against them, and engaging in discriminatory threatening and harassing behavior towards them. *See, e.g.*, Compl., at ¶ 94 ("[F]rom 2004 through 2015 for Ms. Tejada, and from 2004 through the present day for Mr. Silva, Defendants have endeavored to incorporate the [discriminatory] two-page Lease Addendum and its provisions into the renewal leases executed by Ms. Tejada and Mr. Silva."); *id.* at ¶ 97 ("Defendants have intentionally and repeatedly offered different leases to Latino Plaintiffs Ms. Tejada and Mr. Silva, as compared to white tenants."); *id.* at ¶ 100 ("[F]rom 2010 to 2016, Defendants commenced five eviction proceedings against Ms. Tejada. Defendants lacked sufficient legal grounds for bringing at least four of the proceedings commenced against Ms. Tejada."); *id.* at ¶ 140 ("Mr. Decampos spent four months without heat in his apartment, from October 2016 through February 2017."). Plaintiffs sufficiently allege defendants

15

continuously engaged in a pattern of discriminatory behavior in an effort to displace the rent-stabilized Latino tenants.

The "continuing violations" doctrine extends the limitations period for federal law claims as well as the New York City Human Rights Law and Housing Maintenance Claims. *See Blake v. Bronx Lebanon Hospt. Ctr.*, No. 02 CIV. 3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003) (denying a motion to dismiss New York City Human Rights Law claims brought under the continuing violation theory); N.Y.C. Admin. Code § 27-2004(a)(48) (prohibiting acts such as " . . . repeated interruptions or discontinuances of essential services" and "commencing repeated baseless or frivolous court proceedings").

Because the Housing Maintenance law was first effective in 2008, and has no retroactive effect, the continuing violations doctrine is applied only to the date of enactment. *Aguaiza v. Vantage Properties, LLC*, 69 A.D.3d 422, 423–24 (2010).

The federal housing claim and the City Human Rights Law claims may be brought, as alleged, from 2001 through 2017.

   c. Rent Stabilization Fraud

The statute of limitations is extended under the Rent Stabilization Law; a claim of fraud has adequately been pled. The complaint alleges defendants increased rental prices well above the legal limit, never reported any apartment or building improvements warranting such increases in price, and never charged a rental amount sufficient to "deregulate" the units. *Pehrson v. Div. of Hous. & Cmty. Renewal of State*, 946 N.Y.S.2d 68 (Sup. Ct. 2011); *Altschuler v. Jobman 478/480, LLC.*, 22 N.Y.S.3d 427, 429 (N.Y. App. Div. 2016); *see also* Justin R. La Mort, *The Theft of Affordable Housing: How Rent-Stabilized Apartments Are Disappearing from*

*Fraudulent Individual Apartment Improvements and What Can Be Done to Save Them*, 40 N.Y.U. Rev. L. & Soc. Change 351, 365-66 (2016).

Allegations of fraud are bolstered by the claim that defendants engaged in a systematic discriminatory practice with the purpose of displacing Latino residents, deregulating their apartments, and then raising the rent.

VI. Conclusion

The motion of defendants to dismiss the complaint is denied. The case shall proceed to trial.

Motions for summary judgment cannot be supported on the factual record already revealed; permission to make such a motion is denied to defendants and to plaintiffs.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 10, 2018
      Brooklyn, New York